IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HON. JOHN H. BRADBURY, ) | |
| ) | Case No.  CV-09-352-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| CHIEF JUSTICE DANIEL T. ) | |
| EISMANN, et al., ) | |
| ) | |
| Defendants. ) | |

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss (Docket No. 10) and Plaintiff's Motion in the Alternative to Stay Motion to Dismiss and to Grant Leave for Limited Discovery (Docket No. 19).  The Court heard oral argument on the motions on October 14, 2009 and now issues the following decision.

## BACKGROUND

Judge Bradbury is an Idaho state district judge.  Idaho statute requires that district judges "actually reside" in the county where they preside.  Judge Bradbury's claim arises out of a state judicial misconduct proceeding addressing whether he "actually resides" in Idaho County, the county where he presides as a

**Memorandum Decision and Order - 1**

state court district judge.  The Idaho Judicial Council investigates allegations of judicial misconduct, and the Idaho Supreme Court has original jurisdiction over claims of judicial misconduct in Idaho.

Judge Bradbury filed his Complaint in this matter asking for injunctive and declaratory relief preventing the justices of the Idaho Supreme Court from participating in his state court misconduct proceeding.  Judge Bradbury initially asserted that Chief Justice Eismann's dual role as Chief Justice of the Idaho Supreme Court and as Chairman of the Idaho Judicial Council created an inherent bias toward him.  In turn, Judge Bradbury argued that each of the justices of the Idaho Supreme Court was biased toward him.  However, after commencement of this case, Chief Justice Eismann recused himself from Judge Bradbury's misconduct case.  Nevertheless, Judge Bradbury still contends that the remaining Idaho Supreme Court justices should be disqualified because they were potentially influenced by Chief Justice Eismann before and upon his recusal.

Earlier, this Court denied Judge Bradbury's Motion for Temporary Restraining Order and Motion for Expedited Hearing.  The Idaho Supreme Court then issued a decision in Judge Bradbury's case concluding that he did not "actually reside" in Idaho County. (Runft. Aff., Ex. 9, Docket No. 34).  The Idaho Supreme Court ordered Judge Bradbury to establish his primary residence in Idaho

**Memorandum Decision and Order - 2**

County and submit an affidavit stating that he actually resides in Idaho County within 21 days of the date of the order. (Id.). The Idaho Supreme Court stated that it would file a final order upon Judge Bradbury's compliance with these requirements. (Id.) Judge Bradbury filed a notice of compliance with the Idaho Supreme Court's order within the 21-day period. (Runft Aff., Ex. 10, Docket No. 34). To date, the Idaho Supreme Court has issued no further decisions.

## ANALYSIS

Defendants initially asked this Court to dismiss this case pursuant to the Younger abstention doctrine. However, after the parties fully briefed the Younger abstention doctrine, and just days before this Court heard oral argument on the pending motions, the Idaho Supreme Court issued its decision that Judge Bradbury did not "actually reside" in Idaho County. Counsel then contacted Court staff, and the parties and the Court determined that the parties would file supplemental briefs discussing whether the Younger abstention doctrine still applies to this case, and/or whether the Complaint should be dismissed on other grounds.

In their supplemental brief, Defendants suggested that the Rooker-Feldman doctrine applies to this case. Under the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments because jurisdiction over such appeals is vested exclusively with the

United States Supreme Court. *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The Rooker-Feldman doctrine states that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for relief, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). However, the Supreme Court recently observed that neither Rooker nor Feldman elaborated a rationale for a wide-reaching bar on jurisdiction of lower federal courts, and the cases since *Rooker* and *Feldman* have emphasized the narrowness of the Rooker-Feldman rule. *Lance*, 546 U.S. at 464.

The Supreme Court has also explained that Rooker-Feldman is "a narrow doctrine, confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*.; (citing *Exxon Mobil Corp.*, 544 U.S. at 286. The United States Supreme Court's decisions in *Rooker*

**Memorandum Decision and Order - 4**

and *Feldman*, and subsequent Ninth Circuit decisions applying the Rooker-Feldman doctrine denying jurisdiction, "fall into a relatively clear pattern: It is a forbidden de facto appeal under Rooker-Feldman when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).

Here, the Idaho Supreme Court has not issued a final judgement in Judge Bradbury's state misconduct case. Rather, in its most recent decision, the Idaho Supreme Court concluded that Judge Bradbury does not "actually reside" in Idaho County and ordered Judge Bradbury to establish his primary residence in Idaho County. (Runft. Aff., Ex. 9, Docket No. 34). However, the Idaho Supreme Court went on to state that a "final Order will issue upon fulfillment of these compliance terms. If compliance is not forthcoming within said 21-day period, we will revisit this Order." (Id). Under these circumstances, the Court finds that a final judgment has not issued in Judge Bradbury's state case, and Rooker-Feldman does not apply.[1]

Instead, the Younger abstention doctrine, as discussed by the parties in their

---

[1] The Court will note that if the Idaho Supreme Court had issued a final judgment based on Judge Bradbury's compliance notice, it appears that Rooker-Feldman would apply to preclude jurisdiction in this Court.

**Memorandum Decision and Order - 5**

initial briefs, applies.  Based on notions of comity, the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971) "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001) (quoting *Middlesex County Ethics Committee v. Garden State Bar*, 457 U.S. 423, 431 (1982).  Originally applicable only to state criminal proceedings, the Younger principle has been extended to civil proceedings where important state interests are involved.  *Id*.  Thus, "[a]bsent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Id*. (Internal quotations and citations omitted).  If the Younger doctrine applies, a case should be dismissed.  *Id*.

Here, Judge Bradbury does not necessarily dispute that the three elements of the Younger abstention doctrine apply.  Instead, he suggests that extraordinary circumstances prevent application of the Younger abstention doctrine.  Specifically, Judge Bradbury contends that the Justices are biased against him.

Due process certainly requires a "fair trial in a fair tribunal" but "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S.Ct. 2252, 2259 (2009) (Internal

**Memorandum Decision and Order - 6**

quotations and citations omitted). Still, judges must recuse themselves in "circumstances in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id*. (Internal quotations and citations omitted). The defining standard the Court must consider is whether "under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id*. at 2263 (Internal quotations and citations omitted). In other words – is there a serious risk of actual bias based on objective and reasonable perceptions. *Id*.

The Supreme Court has found serious risk in circumstances where a mayor/judge benefitted financially from the defendant's conviction, where a judge was the object of the defendant's contempt, and where a judge would feel a debt of gratitude toward a party who had earlier expended great effort in getting the judge elected. *Id*. at 2262 (Internal citations omitted). These are extraordinary situations, however, where the Constitution requires recusal. *Id*. at 2265. "In each case the Court dealt with extreme facts that created an unconstitutional probability of bias that cannot be defined with precision." *Id*. (Internal quotations and citations omitted).

**Memorandum Decision and Order - 7**

Such extreme facts are not apparent in this case. To a great extent, Judge Bradbury relies on Justice Eismann's recusal statement, where he suggests that Judge Bradbury tried to obtain certain information in his case in order to retaliate against the "person or persons who reported his violation to the Judicial Council." (Runft, Ex. 1).

Judge Bradbury therefore suggests that Chief Justice Eismann determined that Judge Bradbury committed a violation before hearing the matter in open court. Judge Bradbury then contends that the remaining Justices are biased because they conferenced and deliberated with Chief Justice Eismann before the Chief Justice recused himself.

Given his recusal, Chief Justice Eismann's own potential bias is no longer an issue. Thus, the question is whether, based on objective and reasonable perceptions, there is a serious risk of actual bias on the remaining justices. *Caperton*, 129 S.Ct. 2263. Nothing in the record persuades the Court to answer that question in the affirmative. As discussed above, extreme circumstances include situations where a judge may receive a financial benefit, where the judge is the object of a party's contempt, or where a judge may benefit financially from the outcome of the case. *Id*. at 2262. Nothing of this sort is present here. It is also worth noting that Justice Kidwell, J. Pro Tem, took part in Judge Bradbury's

**Memorandum Decision and Order - 8**

misconduct case, apparently conferenced with the other justices, and dissented in the ultimate decision that Judge Bradbury did not "actually reside" in Idaho County. This, at the very least, suggests that conferencing together did not poison the entire panel.

Finally, in a somewhat related argument, Judge Bradbury takes issue with the Idaho Judicial Council's decision to change course and investigate whether he "actually resides" in Idaho County after having discontinued a similar investigation once before. Therefore, in his misconduct case, Judge Bradbury made discovery requests about why the Idaho Judicial Council decided to re-open the investigation, including requests for information about who reported his alleged violation to the Idaho Judicial Council and what information was conveyed as part of that report. The Idaho Judicial Council refused these discovery requests on the basis of confidentiality, and the Idaho Supreme Court denied Judge Bradbury's subsequent motions to compel the Idaho Judicial Council to produce the information.

The question posed then is whether the Idaho Supreme Court's denial of Judge Bradbury's motions for discovery are the type of "extraordinary circumstance" contemplated under the Younger abstention doctrine. *Columbia Basin Apartment Ass'n*, 268 F.3d at 799. The Court finds that they are not. Nothing in the record before this Court indicates that the information sought by

**Memorandum Decision and Order - 9**

Judge Bradbury was relevant to the Idaho Judicial Council's ultimate decision, or that the Idaho Judicial Council considered any such information in making its decision.  Even more important is the fact that the Idaho Supreme Court limited its review of Judge Bradbury's case to the "record of proceedings before the [Idaho Judicial] Council." (Runft. Aff., Ex. 9, Docket No. 34).  Thus, the original complaint against Judge Bradbury played no role in the Idaho Supreme Court's decision that he did not "actually reside" in Idaho County.  Under these circumstances, the Court finds that the Idaho Supreme Court's denial of Judge Bradbury's motions for discovery are not the type of "extraordinary circumstance" contemplated under the Younger abstention doctrine.  *Columbia Basin Apartment Ass'n*, 268 F.3d at 799. Therefore, the Court will apply the Younger abstention doctrine to Judge Bradbury's claim that the failure to provide discovery denied him due process of law, and will abstain from hearing Judge Bradbury's claims.

## ORDER

NOW THERE FORE IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss (Docket No. 10) shall be, and the same is hereby, GRANTED, and that this case be dismissed in its entirety.

IT IS FURTHER ORDERED that Plaintiff's Motion in the Alternative to Stay Motion to Dismiss and to Grant Leave for Limited Discovery (Docket No. 19)

**Memorandum Decision and Order - 10**

shall be, and the same is hereby DENIED.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.



DATED: **October 20, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 11**